Herbert P. Weinmann and Eric W. Weinmann v. Commissioner.
Weinmann v. Commissioner
Docket Nos. 64922, 64923.
United States Tax Court
T.C. Memo 1961-69; 1961 Tax Ct. Memo LEXIS 281; 20 T.C.M. (CCH) 343; T.C.M. (RIA) 61069; March 14, 1961
*281 The only issue under the pleadings was whether purchases and sales of shares of a particular stock by the petitioners pursuant to call options and incident thereto were bona fide transactions having substance, which could be recognized for tax purposes. Respondent's determinations in the deficiency notices were made on the ground that they lacked substance and could not be recognized. After the trial, in his brief, the respondent abandoned that issue, conceding that the disputed transactions could be recognized. In his brief, the respondent raised questions which had not been pleaded. Held, respondent erred in the determinations which gave rise to the issue pleaded. Held, further, that questions not raised by the pleadings, concerning the fair market values of call option contracts and other matters, cannot be considered. Lincoln Orens, Esq., 19 Rector St., New York, N. Y., for the petitioners. Emil Sebetic, Esq., for the respondent. HARRON Memorandum Opinion HARRON, Judge: The Commissioner determined income tax deficiencies for the taxable year 1953, as follows: Docket No. 64922, Herbert P.
Weinmann
$13,748.79
Docket No. 64923, Eric W. Wein-
mann
4,230.25
*282 The petitioners, residents of New York City, filed their respective income tax returns for the taxable year 1953, which were prepared on a cash basis, with the district director of internal revenue for the Lower Manhattan District of New York. The petitioners are referred to hereinafter as Herbert and Eric. The petitioners are active investors in securities. In 1953 the petitioners were parties to several call option contracts. The stock covered by each option contract was the same, New York, Chicago, and St. Louis Railroad common stock. Some of the call contracts were written by others, optionors, and each of the petitioners was an optionee with the right to buy railroad stock at option prices. There were some other call option contracts executed by each of the petitioners as the optionors, under which petitioners, individually, were obligated to sell railroad stock to the particular optionees. Referring to one of the petitioners, Herbert, as a matter of convenience (the facts being essentially the same with respect to Eric) the following were done during 1953: Herbert exercised his options to purchase shares of railroad stock from optionors at the option prices. Herbert held *283 such railroad stock for more than 6 months and then sold it to brokers during 1953 at market prices. The prices in the call options were considerably lower than the market prices at which the shares were sold. Herbert reported in his return for 1953 long-term capital gains in the total amount of $19,670.49. With respect to the call option contracts written by Herbert, the optionees exercised their options. Herbert complied with his obligations and sold railroad stock to the optionees. However, he was advised by his broker that when the calls were received for the stock he should make short sales to brokers for the benefit of the optionees, which would be covered at a later date. Herbert followed that advice. In order to obtain railroad stock to cover the short sales, he was obliged to purchase railroad stock from brokers at market prices. As was true under the other call options where Herbert was the optionee, the option price was considerably lower than market prices. In his return for 1953, Herbert reported short-term capital losses in the total amount of $20,628.19. For 1953, Herbert reported short-term capital gains from transactions in other securities in the amount of $24,943.78. *284 The total amount of the short-term capital losses which Herbert reported from his transactions in meeting calls made on him for railroad stock reduced the amount of the short-term gains to $4,315.59. The Commissioner determined, upon audit of the petitioners' returns for 1953, that all of the transactions in railroad stock under and relating to the call options were without substance and could not be given any recognition for income tax purposes. He therefore determined in his deficiency notices that the long-term gains and short-term losses should be given no effect and made adjustments which decreased the petitioners' respective long-term capital gains and increased their short-term capital gains. For the most part, the deficiencies involved in these cases resulted from such adjustments. In the deficiency notices, the respondent did not give any explanation for his determination. He stated only that it had been determined that "net capital gain was understated" in particular amounts. Each petitioner alleged in his petition in this Court that the respondent erred in his determinations relating to long-term capital gains and short-term losses. The facts stated in the petition upon *285 which each petitioner relied recited the facts pertaining to the call options, the purchases and sales of railroad stock, and the related transactions. In his answer, the respondent generally denied all of the allegations of the petitioners. At the trial of these cases, the respondent filed a motion for leave to amend the answers. The motions were granted and an amendment to each answer was filed. In the amendment to the answers, the respondent "affirmatively" alleged that the petitioners had agreed to file a stipulation of facts relating to the transactions involving call options on railroad stock. In addition, the respondent alleged that in the event the Court should determine that the transactions described in the stipulation of facts could be recognized for tax purposes, it might be possible that a recomputation of each petitioner's income tax liability would result in increased deficiencies, and therefore he made claims under section 272(e), 1939 Code, for any such increased deficiencies as might result from a recomputation of each petitioner's income tax liability under a decision of this Court. The respondent did not make any allegation other than the above. At the trial, *286 respondent's counsel stated that respondent still maintained that the disputed transactions had been entered into for the purpose of achieving tax savings, that they were lacking in substance and economic significance, and that there was no primary motive to realize any substantial economic benefit apart from obtaining reductions in taxes. Respondent's counsel stated that if the Court should hold that the transactions were bona fide and legitimate dealings in securities, the respondent would contend in the alternative that petitioners had improperly computed the results and that they had individually sustained long-term capital losses rather than gains, and short-term capital gains, rather than losses. The parties filed a stipulation of facts in which the details of all the transactions are set forth. Petitioners called no witnesses. The respondent called a member of the petitioners' broker's firm. He testified to general matters with respect to call option contracts. There were no additional amendments to the pleadings. The question presented by the pleadings is whether the disputed transactions involving call options and purchases and sales of railroad stock under or in connection *287 with the call options, were lacking in commercial and economic purpose, and substance, were entered into solely for the purpose of achieving for the petitioners reductions in taxes, and, therefore, cannot be recognized for tax purposes. That is the only question raised by the pleadings. (See transcript, pp. 5, 13, 18, 20, 21, 24.) In his brief, respondent requested the Court to find as an ultimate fact that "all of the transactions involved in these cases are of legal effect and significance and are recognizable for tax purposes, and respondent erroneously determined them to be of no significance whatsoever to the petitioners for Federal income tax purposes." Thereby, respondent abandoned the only issue raised by the pleadings. He confessed error in his determination that no effect and recognition should be given for tax purposes to the transactions in 1953 of the petitioners in the railroad stock pursuant to the call option contracts and the purchases and sales of the same stock on the market, which were related to the purchases and sales of the same kind of stock under the call options. When the respondent in his brief abandoned the only issue raised by the pleadings, no issue *288 remained before the Court for decision. Respondent devoted his arguments in his brief to new questions which he affirmatively raised for the first time in his brief, such as whether an exchange of an optionor call option contract for an optionee call option contract affected the cost bases to each petitioner of different blocks of railroad stock which were (a) acquired under a call option and (b) sold under another call option; and whether one or both of the call options had a fair market value at a particular time. Such questions are questions of fact (at least in part) with respect to which the burden of proof would be on the party who raised the questions. If respondent had drawn his pleading correctly, which he failed to do in the instance where he filed an amendment to each answer, or if he had filed another amendment to each answer, he affirmatively would have raised new questions with respect to which he would have the burden of proof. But he did not amend his pleading to raise the questions or file a motion for leave to do so. They were presented for the first time only in his brief. At the trial of these cases, respondent had not yet decided whether or not he would abandon *289 the issue raised by the pleadings. The entire record and the arguments of the parties have been carefully considered. We find that the respondent's determinations in his deficiency notices and the pleadings do not present the new questions which respondent has raised for the first time in his brief. Under the pleadings here, the burden of proof is on the petitioners; no burden is on the respondent. Nevertheless, full consideration of certain questions presented for the first time in respondent's brief would involve determining whether the respondent met his burden of proof under his affirmatively pleaded allegations. But he did not raise those questions in his pleading. Absent proper pleadings, the burden of proof rule cannot be applied correctly. Issues may not be pleaded in a stipulation of facts or in a brief under the Rules of this Court. Rule 7(c)(4). As a matter of fact, the stipulation of facts here does not in itself contain a statement that there is any new issue. This Court has held repeatedly that it will not and cannot consider issues which have not been pleaded. See , and the cited cases; ; *290 ; ; . In , the respondent attempted to raise a new issue in his brief. The new issue had not been pleaded by respondent in his answer. We concluded that since the additional issue had not been raised adequately it was not properly before the Court and said that "issues raised for the first time on brief will not be considered." The questions presented in respondent's brief are not before this Court. It is held, upon the respondent's abandonment of the only issue raised by the pleadings, that the respondent erred in his determinations that no effect for tax purposes could be given to the long-term capital gains and the short-term losses which were reported to have been realized from the transactions in railroad stock. Because of other uncontested adjustments, Rule 50 computations are required. Decisions will be entered under Rule 50.